UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
TRACEY FRIESEN,

                              Plaintiff,

                  -against-

AMERICAN NATIONAL STANDARDS INSTITUTE,

                              Defendant.
------------------------------------------------------------------x

**COMPLAINT**

Civil Action No.
06 Civ. 3020
(MGC)(FM)

JURY TRIAL
REQUESTED

        Plaintiff, TRACEY FRIESEN, by and through her attorney, Margaret McIntyre, Attorney at Law, as and for her Complaint, alleges the following:

<u>INTRODUCTION</u>

        1.     This is an action for injunctive and declaratory relief, back pay, front pay, compensatory and punitive damages, attorneys' fees, costs and other relief to redress employment discrimination on the basis of disability and retaliation, brought pursuant to the Americans With Disabilities Act of 1990 ("ADA") 42 U.S.C. §§ 12101 *et seq.*; and § 8-107(a) of the Administrative Code of the City of New York.

        2.     This is also an action to redress the denial of and interference with plaintiff's rights under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. §§ 2601 *et seq.*

        3.     This is also an action to redress retaliation against plaintiff for purposes of interfering with plaintiff's rights to welfare benefits provided by defendant American National Standards Institute ("defendant"), in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§1001 *et seq.*, as well as failure to notify plaintiff of the cancellation of her health insurance coverage, in violation of New York State Labor Law §195(6).

## JURISDICTION AND VENUE

4.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4), and 29 U.S.C. §§1132, 1140 and 2617.  In addition, plaintiff invokes the supplemental jurisdiction of this Court pursuant to 28 U.S.C. §1367(a).

5.      Venue is properly laid in this district pursuant to 28 U.S.C. §1391(b) in that the unlawful employment practices alleged below were committed within this district.

## PARTIES

6.      Plaintiff is a citizen of Canada and a resident of the Province of British Columbia.  During all relevant times herein, plaintiff was a resident of the State of New York, County of Kings, and was employed by defendant in New York County.

7.      Defendant is a not-for-profit corporation authorized to do business in New York State and serves as administrator and coordinator of the United States private sector voluntary standardization system and conformity assessment system.  Defendant maintains its headquarters in Washington, DC, and maintains an office at 25 West 43rd Street, 4th Floor, New York, New York 10036.

8.      Upon information and belief, defendant employs over 50 employees and is an employer within the meaning of the ADA, 42 U.S.C. § 12111(5); the FMLA, 26 U.S.C. §2611(4)(A); ERISA, 29 U.S.C. § 1002(5); and of §8-102 of the Administrative Code of New York City.

## ADMINISTRATIVE HISTORY

9.      Plaintiff filed a charge of employment discrimination against defendant based on disability and retaliation under the ADA with the United States Equal Opportunity Employment Commission (hereinafter "EEOC") on or about July 14, 2005, which was within 300 days of the last incident of discrimination.

10. On January 31, 2006, the EEOC issued plaintiff a Notice of Right to Sue, which was received by plaintiff's attorney on February 6, 2006. This complaint has been filed within 90 days of plaintiff's receipt of the EEOC's Notice of Right to Sue.

## FACTS

11. Plaintiff was employed by defendant as Manager, Information Services, from December 2002, until October 29, 2004. Plaintiff worked in defendant's office in New York, New York.

12. At all relevant times herein, plaintiff was qualified for the position she held with defendant. Plaintiff was recognized throughout the company as both highly skilled and hard working. Defendant sponsored plaintiff for a TN visa, which is available to Canadian professionals such as plaintiff, and in doing so, defendant stressed its critical need for plaintiff's services.

13. During her employment with defendant, plaintiff was eligible to receive and did receive health insurance coverage from defendant, which was among the benefits defendant offered all of its full-time employees.

14. Upon information and belief, the health insurance defendant offered to its employees while plaintiff was employed by defendant constituted an employee welfare benefit plan as defined by ERISA.

15. During her employment with defendant, plaintiff was eligible to receive and did receive short and long-term disability insurance coverage from defendant, which was among the benefits defendant offered all of its full-time employees.

16. Upon information and belief, the disability insurance defendant offered to its employees while plaintiff was employed by defendant constituted an employee welfare benefit plan as defined by ERISA.

17. In September 2003, plaintiff was diagnosed with Multiple Sclerosis (MS), a progressive neurological disease that affects plaintiff's balance, ability to walk and physical strength.

18. At all relevant times herein, plaintiff was disabled within the meaning of the Americans with Disabilities Act (ADA) in that she was substantially limited in the major life activities of walking, standing and performing certain manual tasks for extended periods.     a)     Plaintiff was also a qualified individual with a disability in that she could, with reasonable accommodation, perform the essential functions of the job that she held with defendant.

19. At all relevant times herein, plaintiff was disabled within the meaning of §8-102(16) of the New York City Administrative Code in that she suffered from a degenerative neurological disease that causes physical impairment.

20. At all relevant times herein, plaintiff suffered from a serious health condition in that she was receiving continuing treatment by a health care provider for a chronic serious health condition.

21. At all relevant times herein, plaintiff was eligible for the protections of the FMLA.

22. In or about September 2003, when plaintiff's diagnosis of MS was confirmed, she reported the diagnosis to her immediate supervisor, Robert Hager, Director of Publications, and to Carmela Crivelli, Director, Human Resources.

23. Shortly after revealing her disability, plaintiff requested that she be permitted to work part of her work week at home. As most of plaintiff's work was performed on the computer, this request could have been reasonably accommodated. After much resistance from officials of defendant, plaintiff was allowed to work at home on Mondays, Wednesdays and Fridays, on a trial basis.

24. With this accommodation, plaintiff was able to complete her work expeditiously, which was reflected in her June 2004 performance evaluation.

25. Despite plaintiff's ability to perform the essential functions of her position, defendant's officials expressed annoyance with plaintiff's need for accommodation and her supervisor, Robert Hager, made several comments that indicated that plaintiff's disability made him uncomfortable.

26. In the summer of 2004, plaintiff asked Mr. Hager why he had not raised an important topic at a meeting the day before. Knowing that MS can cause memory loss, Mr. Hager yelled at plaintiff, in front of other staff, "So now you can't even remember what happened at the meeting!?" It turned out that Mr. Hager, not plaintiff, was mistaken about what had transpired at the meeting, yet he humiliated plaintiff in front of other staff by his inaccurate suggestion that her disability was adversely affecting her work performance.

27. During that same period, Bob Hager began questioning plaintiff about her day-to-day duties in a way that suggested he did not expect plaintiff to remain employed with defendant.

28. Other of defendant's officials resisted plaintiff's requests for reasonable accommodations. For example, plaintiff requested the reasonable accommodation of being provided with an appropriate chair that would support her arms as she typed on the computer. Plaintiff was told that she could not have such a chair, as chairs with arms were only provided by defendant to employees holding the title of director or higher. Despite plaintiff's numerous requests, it was not until the summer of 2004 that she was provided with an "ergonomic chair," which was too large for her and did not support her arms. Plaintiff had tested and recommended a chair from Staples that cost half the price of the one finally provided. When plaintiff reported that the chair defendant provided was not helpful, she was told, "this is the chair that we get for people with back problems." Defendant never provided plaintiff with an appropriate chair.

29. On or about September 17, 2004, plaintiff's doctor advised plaintiff to take a short leave of absence, until October 25, 2004. Although defendant approved the leave, defendant did not characterize the leave as an FMLA leave.

30. While plaintiff was employed by defendant, defendant never provided plaintiff with information regarding her rights and responsibilities under the Family Medical Leave Act (FMLA) or the ADA.

31. While plaintiff was out on leave, her father became terminally ill and plaintiff traveled to Canada to be with him. Nonetheless, throughout October, plaintiff reiterated her intention to return to work as soon as she saw her doctor on October 25, 2004.

32. Prior to and during plaintiff's medical leave, she had numerous discussions with Robert Hager about the possibility of her working from home on a full-time basis to accommodate her disability. Plaintiff's difficulties with walking and maintaining balance made travel on the New York City public transportation system difficult. Mr. Hager was non-committal about whether plaintiff's requests would be accommodated.

33. In or about late October 2004, plaintiff called and e-mailed defendant to confirm that shortly she would be returning to New York, visiting her doctor and returning to work as expected. However, plaintiff was then advised that she could not return to work, as her position was being eliminated.

34. The explanation offered for the termination of plaintiff's employment was pretextual.

35. Upon information and belief, since plaintiff's employment was terminated, defendant hired consultants to complete the work that plaintiff would have been doing if she had been permitted to return to work.

6

36. In addition, even if plaintiff's position had been truly eliminated, there was ample work in other departments for which plaintiff was well qualified, but no effort was made to retain plaintiff.

37. Defendant did offer plaintiff one alternative job, but it was not one that offered equivalent pay, benefits and other employment terms and conditions, as compared to the one that she held. The job offered, part-time database indexer, required none of the specialized qualifications and experience that plaintiff possesses.

38. The job offered to plaintiff was also part-time, which would have meant that plaintiff's visa could not be renewed, as the TN visa is available only for full-time employment. In addition, if plaintiff became a part-time employee, she would not have been eligible to remain in defendant's health and disability insurance plans. Upon information and belief, defendant had no other part-time employees at the time.

39. The job of part-time database indexer was so inferior to the one plaintiff held that it was obviously offered as an inducement to trigger plaintiff's resignation. Plaintiff told defendant, by e-mail and on the telephone, that she believed that the decision to allegedly eliminate her position violated the ADA.

40. In discussions with plaintiff about the suitability of the job being offered to her, defendant's officials repeatedly expressed exasperation with plaintiff for refusing to accept the inferior position or to voluntarily resign.

41. Upon information and belief, after plaintiff's employment was terminated, there was no notice sent to other employees announcing plaintiff's departure, as was defendant's custom.

42. Upon information and belief, employees of defendant who inquired about plaintiff when she did not return to work were told by Carmela Crivelli that plaintiff was out on an "FMLA leave."

43. Beyond terminating plaintiff's employment for unlawful reasons, defendant also canceled plaintiff's health insurance coverage immediately upon the termination of her employment, without notice, in violation of New York State Labor Law §195(6).

44. Plaintiff learned that her health insurance was canceled when she tried to fill prescriptions that she critically needed. Thus, before plaintiff could even make a decision about whether to elect COBRA, she was prevented from seeing her neurologist and from obtaining medication and treatment that would have kept her functioning and slowed the progress of her disease. Defendant's officials were well aware of the disastrous consequences that could result from the denial of critical medical treatment to a person suffering from MS.

45. Because of plaintiff's immigration status, she was legally prohibited from accepting employment with any employer other than defendant in the United States. Plaintiff's immigration status also rendered her ineligible for unemployment insurance benefits. Therefore, plaintiff was unable to afford to continue health insurance coverage when she finally did get the notice that she could elect COBRA coverage.

46. As a result of the stress that plaintiff suffered and her loss of medical treatment, plaintiff suffered an acute exacerbation of her disease and became bed-ridden. She was unable to leave her apartment or even properly care for herself.

47. Plaintiff was forced to return to Canada and wait for the expiration of a three-month waiting period before she could obtain medical care through the Canadian health care system.

48. Defendant's cancellation of plaintiff's health insurance before she could formally elect COBRA coverage and come up with the first premium payment within the time allotted under COBRA demonstrated profound animosity toward plaintiff because of her disability, because she had requested that her disability be accommodated and because she had taken a medical leave of absence.

49. Upon information and belief, one of the reasons defendant terminated plaintiff's employment was to avoid incurring costs associated with defendant's health insurance benefit plan.

50. Upon information and belief, one of the reasons defendant terminated plaintiff's employment was to avoid incurring costs associated with defendant's disability insurance benefit plan.

51. The way in which plaintiff's employment was terminated and health insurance canceled caused plaintiff tremendous emotional distress and anxiety and exacerbated her MS symptoms.

52. As a result of the denial of critical medication and the stress and anxiety caused by defendant's discriminatory and retaliatory actions, plaintiff's symptoms of MS have been exacerbated and plaintiff has become totally disabled and unable to work.

53. Defendant's treatment of plaintiff was carried out with malice and/or reckless indifference to plaintiff's federally protected rights.

## AS AND FOR A FIRST CAUSE OF ACTION

54. Plaintiff repeats and realleges each and every allegation of paragraphs 1 to 54 of this complaint as if fully set forth herein.

55. Defendant's acts, practices, and policies described herein constitute intentional discrimination against plaintiff on the basis of her disability, in violation of 42 U.S.C. §§ 12101 *et seq.*

## AS AND FOR A SECOND CAUSE OF ACTION

56. Plaintiff repeats and realleges each and every allegation of paragraphs 1 to 56 of this complaint as if fully set forth herein.

57. Defendant failed to provide plaintiff with a reasonable accommodation of her disability, in violation of 42 U.S.C. §§ 12101 *et seq.* Plaintiff alleges a continuing violation on this claim.

## AS AND FOR A THIRD CAUSE OF ACTION

58. Plaintiff repeats and realleges each and every allegation of paragraphs 1 to 58 of this complaint as if fully set forth herein.

59. Defendant's acts, practices, and policies described herein constitute retaliation against plaintiff for her requests for reasonable accommodation of her disability, in violation of in violation of 42 U.S.C. §§ 12101 *et seq.*

## AS AND FOR A FOURTH CAUSE OF ACTION

60. Plaintiff repeats and realleges each and every allegation of paragraphs 1 to 60 of this complaint as if fully set forth herein.

61. Defendant's acts, practices, and policies described herein constitute intentional discrimination against plaintiff on the basis of her disability, in violation of §8-107(a) of the Administrative Code of the City of New York.

## AS AND FOR A FIFTH CAUSE OF ACTION

62. Plaintiff repeats and realleges each and every allegation of paragraphs 1 to 62 of this complaint as if fully set forth herein.

63. Defendant failed to provide plaintiff with a reasonable accommodation of her disability, in violation of §8-107(a) of the Administrative Code of the City of New York.

## AS AND FOR A SIXTH CAUSE OF ACTION

64. Plaintiff repeats and realleges each and every allegation of paragraphs 1 to 64 of this complaint as if fully set forth herein.

65. Defendant's acts, practices, and policies described herein constitute retaliation against plaintiff for her requests for reasonable accommodation of her disability, in violation of §8-107(a) of the Administrative Code of the City of New York.

## AS AND FOR A SEVENTH CAUSE OF ACTION

66. Plaintiff repeats and realleges each and every allegation of paragraphs 1 to 66 of this complaint as if fully set forth herein.

67. Defendant's acts, practices, and policies described herein constitute retaliation against plaintiff for the purposes of interfering with the attainment of her rights under defendant's health insurance benefit plan, in violation of §510 of ERISA, 29 U.S.C. §1140.

## AS AND FOR A EIGHTH CAUSE OF ACTION

68. Plaintiff repeats and realleges each and every allegation of paragraphs 1 to 68 of this complaint as if fully set forth herein.

69. Defendant's acts, practices, and policies described herein constitute retaliation against plaintiff for the purposes of interfering with the attainment of her rights under defendant's disability insurance benefit plan, in violation of §510 of ERISA, 29 U.S.C. §1140.

## AS AND FOR A NINTH CAUSE OF ACTION

70. Plaintiff repeats and realleges each and every allegation of paragraphs 1 to 70 of this complaint as if fully set forth herein.

71. By terminating plaintiff's employment, defendant interfered with plaintiff's exercise of her right to take leave covered by the FMLA, in violation of 29 U.S.C. §2615(a)(1).

11

## AS AND FOR A TENTH CAUSE OF ACTION

72. Plaintiff repeats and realleges each and every allegation of paragraphs 1 to 72 of this complaint as if fully set forth herein.

73. By terminating plaintiff's employment, defendant retaliated against plaintiff for having taken medical leave to which she was entitled, in violation of 29 U.S.C. §2615(a)(2).

## AS AND FOR A ELEVENTH CAUSE OF ACTION

74. Plaintiff repeats and realleges each and every allegation of paragraphs 1 to 74 of this complaint as if fully set forth herein.

75. By canceling plaintiff's health insurance policy without notice to her, defendant violated New York State Labor Law §195(6).

## DEMAND FOR RELIEF

WHEREFORE, plaintiff respectfully requests that this Court:

1. Declare, adjudge and decree that defendant discriminated against plaintiff on the basis of her disability in violation of 42 U.S.C. §§ 12101 *et seq.*

2. Declare, adjudge and decree that defendant failed to provide plaintiff with a reasonable accommodation of her disability, in violation of 42 U.S.C. §§ 12101 *et seq.*

3. Declare, adjudge and decree that defendant retaliated against plaintiff for her requests for reasonable accommodation of her disability, in violation of in violation of 42 U.S.C. §§ 12101 *et seq.*

4. Declare, adjudge and decree that defendant discriminated against plaintiff on the basis of her disability in violation of §8-107(a) of the Administrative Code of the City of New York.

5. Declare, adjudge and decree that defendant failed to provide plaintiff with a reasonable accommodation of her disability, in violation of §8-107(a) of the Administrative Code of the City of New York.

6. Declare, adjudge and decree that defendant retaliated against plaintiff for her requests for reasonable accommodation of her disability, in violation of §8-107(a) of the Administrative Code of the City of New York.

7. Declare, adjudge and decree that defendant retaliated against plaintiff for the purposes of interfering with the attainment of her rights under defendant's health insurance benefit plan, in violation of §510 of ERISA, 29 U.S.C. §1140.

8. Declare, adjudge and decree that defendant retaliated against plaintiff for the purposes of interfering with the attainment of her rights under defendant's disability insurance benefit plans, in violation of §510 of ERISA, 29 U.S.C. §1140.

9. Declare, adjudge and decree that by terminating plaintiff's employment, defendant interfered with plaintiff's exercise of her right to take leave covered by the FMLA, in violation of 29 U.S.C. §2615(a)(1).

10. Declare, adjudge and decree that by terminating plaintiff's employment, defendant retaliated against plaintiff for having taken medical leave to which she was entitled, in violation of 29 U.S.C. §2615(a)(2).

11. Declare, adjudge and decree that by canceling plaintiff's health insurance policy without notice to her, defendant violated New York State Labor Law §195(6).

12. Order defendant to pay plaintiff damages in the amount equal to the value of all costs for medical care incurred by plaintiff as a result of defendant's unlawful acts.

13. Order defendant to pay plaintiff damages in the amount equal to the value of all back pay, plus interest thereon, that plaintiff lost as a result of defendant's discriminatory and retaliatory actions.

14. Order defendant to pay plaintiff damages in an additional amount of liquidated damages equal to the value of all back pay, plus interest thereon, that plaintiff lost as a result of defendant's actions in violation of the FMLA.

15. Order defendant to pay plaintiff damages in the amount equal to the value of all front pay, plus interest thereon, that plaintiff is unable to earn as a result of defendant's discriminatory and retaliatory actions.

16. Enjoin defendant from engaging in further discriminatory or retaliatory actions against plaintiff.

17. Award plaintiff compensatory and punitive damages.

18. Award plaintiff all costs and reasonable attorney's fees incurred in connection with this action.

19. Award such other and further relief as this Court may deem just and proper.

Dated:  April 19, 2006
          New York, New York

                                                                   /S
                                          MARGARET McINTYRE (MM 2099)
                                          Attorney for Plaintiff
                                          225 Broadway, Suite 2515
                                          New York, New York 10007
                                          (212) 227-9987